1  KAREN P. HEWITT
   United States Attorney
2  PETER J. MAZZA
   Assistant United States Attorney
3  California Bar No. 239918
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 557-7034

6  Attorneys for Plaintiff
   United States of America

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10  UNITED STATES OF AMERICA,    )   Case No.  08CR1191-DMS
                                 )
11                Plaintiff,     )   DATE:      May 23, 2008
                                 )   TIME:      11:00 p.m.
12          v.                   )
                                 )   GOVERNMENT'S RESPONSE TO
13  DAVID PEREZ-LEMOS (2),       )   DEFENDANT'S MOTIONS TO:
                                 )
14                               )   (1) DISMISS THE INDICTMENT
                                 )       FOR GRAND JURY VIOLATION;
15                               )   (2) SUPPRESS EVIDENCE;
                                 )   (3) COMPEL DISCOVERY AND
16                               )       PRESERVE EVIDENCE; AND
                                 )   (4) LEAVE TO FILE ADDITIONAL
17                               )       MOTIONS
                                 )
18                Defendant.     )
                                 )
19  _____)

20      COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and

21  through its counsel, Karen P. Hewitt, United States Attorney, and

22  Peter J. Mazza, Assistant United States Attorney, and hereby files

23  its response to Defendant DAVID PEREZ-LEMOS's("Defendant") motions

24  to dismiss the indictment for grand jury violations, suppress

25  evidence; compel discovery, and leave to file additional motions.

26  Said response is based upon the files and records of this case,

27  together with the attached statement of facts and accompanying

28  memorandum of points and authorities.

I

**STATEMENT OF THE CASE**

A.   **THE CHARGE**

On April 15, 2008, a grand jury sitting in the Southern District of California returned a three-count Indictment charging Defendant with transportation of illegal aliens.  On April 17, 2008, Defendant was arraigned on the Indictment.

B.   **STATUS OF DISCOVERY**

To date, the Government has produced all discoverable material related to this case in its possession and will continue to do so in accordance with the applicable rules of discovery.

II

**STATEMENT OF FACTS**

On March 31, 2008, at approximately 6:25 p.m., United States Border Patrol ("USBP") Agent Jason Alba received a call at the El Cajon, California Border Patrol Station from a concerned citizen who reported suspected alien smuggling activity.  The citizen informed Agent Alba that she had observed a tan Chevrolet Yukon sports utility vehicle ("SUV") and a white sedan pulled off the side of State Route 94 together just east of the Mountain Empire campground.  She stated that she observed several individuals jumping into the rear cargo area of the Yukon.  She informed Agent Alba that once the individuals were loaded into the vehicle, both the Yukon and white sedan traveled east on SR-94.  Agent Alba informed agents in the field of the concerned citizen's report.

1    Approximately five minutes after the concerned citizen called
2    the station, USBP Agent Jorge Zuniga observed two vehicles that
3    matched the description given by Agent Alba pass him on Buckman
4    Springs Road, which was approximately 100 yards north of the
5    Buckman Springs Road-SR-94 intersection.  At the time Agent Zuniga
6    passed the vehicles while traveling in the opposite direction, he
7    noticed several individuals crouching down in the Yukon and that
8    the white sedan followed closely behind.  This area is
9    approximately three miles east of the campground and approximately
10   one mile north of the United States-Mexico border.  Agent Zuniga
11   believed these two vehicles to be the same vehicles identified by
12   the concerned citizen based on his distance from the Mountain
13   Empire campground and the amount of time that had passed since he
14   received the dispatch from Agent Alba.

15   Moments later, USBP Agent Canyon Sweet observed the two
16   vehicles approach his position north of where Agent Zuniga had
17   seen them.  He observed only one visible occupant in the Yukon and
18   noted that the driver exhibited nervous behavior, such as gripping
19   the steering wheel tightly and staring straight ahead as he passed
20   Agent Sweet.  Agent Sweet began following the Yukon.  Agent Zuniga
21   observed the white sedan slow down considerably as the Yukon
22   passed the Agent Sweet's location.  However, once Agent Zuniga
23   caught up to the white sedan, it then accelerated at a rapid speed
24   and separated from Agent Zuniga.

25   Agent Sweet noticed the Yukon had trouble navigating the many
26   curves of SR-94.  Agent Sweet also observed that the vehicle
27
28
08cr1191-DMS

appeared to be heavily laden in the rear area of the vehicle. Based on his training and experience, Agent Sweet believed the driver was having difficulty navigating the road because of the excess weight and because the driver was frequently checking his rear view mirror as Agent Sweet followed the vehicle.

After observing the vehicle's erratic driving, Agent Sweet attempted to conduct a vehicle stop of the Yukon by activating his emergency lights and sirens. The Yukon, however, did not yield. Another USBP agent who was positioned ahead of Agent Canyon deployed a controlled tire deflation device (CTDD) on the Yukon as it approached. The CTDD was successful, despite efforts by the Yukon's driver to avoid the CTDD. The driver then attempted to flee on foot from the vehicle. Agent Sweet, however, apprehended him after a brief foot chase. Several other individuals attempted to flee from the Yukon as well, but they were also apprehended. In total, USBP agents apprehended 11 individuals from the Yukon, including the driver who was later identified as Defendant Bermudez. Each of the ten passengers admitted they were citizens and natives of Mexico without legal entitlement to enter or remain in the United States. Defendant Bermudez stated he was a United States citizen.

After the Yukon failed to yield to Agent Sweet, Agent Zuniga performed a vehicle stop on the white sedan. The white sedan eventually stopped approximately 200 yards from the Yukon's location. Agent Zuniga approached the vehicle, and the driver, later identified as Defendant Perez-Lemos, stated that he was a

United States citizen.  Agent Zuniga observed two cell phones in the center console area of the white sedan.  One of the cell phones was broken in half.  Defendant Perez-Lemos stated that he received the phone in that condition.  Agent Zuniga observed that the vehicle's key was unaccompanied by any other keys or a key ring.  Agent Zuniga also observed a piece of paper regarding a court date for Defendant Bermudez, the driver of the Yukon, in the white sedan.  Both drivers were taken into custody.

Material Witness Rodrigo Angulo-Arzate stated that he had made arrangements with an unknown smuggler to be smuggled into the United States for $2,000.  Angulo stated that he crossed the border earlier in the day with a foot guide who thereafter got into the load vehicle with the other aliens.  Angulo stated that he feared for his life when the Yukon driver swerved from side to side as he attempted to flee from the Border Patrol.  Angulo could not identify the driver of the vehicle.

Agents also interviewed Material Witness Carlos Del Monte-Palacios.  Del Monte-Palacios stated that his aunt made arrangements to have him smuggled into the United States.  He stated that he crossed the border with a large group, which was led by a guide.  At the pick up location, the guide informed the aliens to enter the Yukon.  Del Monte-Palacios could not identify the driver.

Finally, Material Witness Olegario Noriega-Gonzalez also interviewed with agents.  Noriega-Gonzalez stated that he had made arrangements with an unknown smuggler to be smuggled into the

United States for $2,000.  Noriega stated that he crossed as part of a large group of illegal aliens who were led by a foot guide. Noriega stated that the foot guide rode as the front seat passenger of the load vehicle.  Noriega could not identify the driver of the load vehicle.

### III

### POINTS AND AUTHORITIES

**A.    THE GRAND JURY WAS NOT MISINSTRUCTED**

Defendant moves to dismiss the indictment against him for alleged errors in the Judge Burns's instruction of the grand jury panel.  The United States explicitly incorporates by reference the briefing on this issue submitted in <u>United States v. Bermudez-Jimenez</u>, 07CR1372-JAH, and <u>United States v. Martinez-Covarrubias</u>, 07CR0491-BTM.  The orders, denying this same motion, are attached as Exhibits 1 and 2.  This motion has been denied by every court to consider it, and the Court should deny it in this instance as well.  However, if the Court would like additional briefing, the United States will oblige.

**B.    AGENTS EXECUTED A LAWFUL STOP OF DEFENDANT'S VEHICLE**

**1.    The Stop Was Legal**

Defendant next argues that the stop of Defendant Perez-Lemos's vehicle was not supported by reasonable suspicion and therefore the fruits of that stop must be suppressed.  Based on the totality of circumstances of the overall smuggling venture, however, agents had reasonable suspicion to stop the white sedan.

The Fourth Amendment prohibits unreasonable searches and seizures by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. United States v. Arvizu, 534 U.S. 266, 273 (2002). However, to stop a motorist in a vehicle, Border Patrol agents need only reasonable suspicion. Id. Reasonable suspicion determinations are made by viewing "the 'totality of circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." Id. Despite the objective nature of this evaluation, "this process allows officers to draw on their own experience and specialized training to make inferences from deductions about the cumulative information available to them that 'might elude an untrained person.'" Id. (citing United States v. Cortez, 449 U.S. 411, 418 (1981)).

Individual factors that may appear innocent in isolation may constitute suspicious behavior when aggravated together. United States v. Diaz-Juarez, 299 F.3d 1138, 1141 (9th Cir. 2002) (citing United States v. Sokolow, 490 U.S. 1, 9-10 (1989). In the context of stops by Border Patrol agents, the Ninth Circuit has enumerated the following factors that may be relevant to whether a stop was based on reasonable suspicion under the totality of circumstances: "(1) characteristics of the area; (2) proximity to the border; (3) usual patterns of traffic and time of day; (4) previous alien or drug smuggling in the area; (5) behavior of the driver; (6) appearance or behavior of the passengers; (7) model and appearance

08cr1191-DMS

1   of the vehicle; and (8) officer experience." <u>United States v.</u>

2   <u>Garcia-Barron</u>, 116 F.3d 1305, 1307 (9th Cir. 1997).

3      The Ninth Circuit has also held that an anonymous tip may be

4   an important factor in the totality of circumstances analysis.

5   <u>United States v. Robert</u>, 747 F.2d 537, 544 (9th Cir. 1984). In

6   <u>United States v. Morales</u>, 252 F.3d 1070, 1076 (9th Cir. 2001), the

7   Ninth Circuit reviewed three seminal Supreme Court cases regarding

8   the use of anonymous tips, <u>Alabama v. White</u>, 496 U.S. 325 (1990),

9   <u>Illinois v. Gates</u>, 462 U.S. 213 (1983), and <u>Florida v. J.L.</u>, 529

10   U.S. 26 (2000), and established that "in order for an anonymous

11   tip to serve as the basis for reasonable suspicion: (1) the tip

12   must include a range of details; (2) the tip cannot simply

13   describe easily observable facts and conditions, but must predict

14   the suspect's future movements; and (3) the future movements must

15   be corroborated by independent police observation."

16      In his moving papers, Defendant myopically focuses on the

17   initial concerned citizen's tip, and attempts to portray it as the

18   sole justification for the stop of Defendant's vehicle. Here, the

19   concerned citizen's tip merely began the investigation of the two

20   cars, which led observations and discoveries by the Border Patrol

21   agents that established reasonable suspicion to stop Defendant's

22   vehicle. Thus, Defendant's reliance on <u>Florida v. J.L.</u>, 529 U.S.

23   266, 270 (2000) and <u>United States v. Fernandez-Castillo</u>, 324 F.3d

24   1114 (9th Cir. 2003) is misplaced because both cases stand for the

25   proposition that an anonymous, uncorroborated tip <u>alone</u> cannot

26   provide reasonable suspicion. Quite different from an

27

28   

uncorroborated tip, the concerned citizen's tip in this case meets the three fundamental factors of reliability under the <u>Morales</u> test.  First, the tip included a range of details.  The citizen described the position of the vehicles (on the side of the road just east of the Mountain Empire campground on SR-94), descriptions of the vehicles (tan Yukon and white sedan), and the relevant conduct taking place (several individuals loading into the rear cargo area of the Yukon).  Second, the tipster went beyond describing "easily observable facts" and informed agents of the suspects' future movements by informing agents that after the suspected aliens loaded into the back of the Yukon, both vehicles proceeded to travel east on SR-94.  Third, the future movements of the suspects were corroborated by law enforcement independently moments later when both Agent Zuniga and Agent Sweet independently observed the Yukon and the white sedan traveling in tandem by their respective positions on Buckman Springs Road just north of the intersection with SR-94 and east of the campground.

As stated above, the tip, however, was only one factor in a litany of actions and observations that gave rise to reasonable suspicion with regards to Defendant's vehicle.  First, the area in which the concerned citizen observed the loading of the vehicles is only one mile north of the United States-Mexico international boundary.  Second, because of this proximity to the border, the area is well known for alien smuggling activity.  Third, the observed behavior of the Yukon driver by Agent Sweet indicated nervousness as he gripped the steering wheel tightly and stared

08cr1191-DMS

straight ahead as he passed Agent Sweet's location. Fourth, both the Yukon and the white sedan drove erratically, and the Yukon failed to yield to Agent Sweet. Finally, both Agents Sweet and Zuniga stated in Agent Sweet's report that the activities they observed from the vehicles were consistent with alien smuggling.

Finally, the fact that some of the factors that led to reasonable suspicion as to the white sedan driven by Defendant Perez-Lemos involved activity attributable to Defendant Bermudez's vehicle is of no matter. As Agent Sweet followed Bermudez and established clear reasonable suspicion of alien smuggling, the actions of suspicious behavior of Bermudez and the Yukon naturally gave rise to suspicion in Defendant Perez-Lemos's vehicle as well because of the established connection between the two vehicles. For instance, the cars were viewed driving in tandem by the concerned citizen, Agent Zuniga, and Agent Sweet. Agent Zuniga identified multiple instances of erratic driving by the white sedan, which he stated is consistent with alien smuggling activity by a scout/trail car that accompanies a load vehicle. Finally, Agent Zuniga did not attempt to effectuate the traffic stop of Defendant Perez-Lemos's vehicle until *after* Defendant Bermudez failed to yield to Agent Sweet. Accordingly, agents had reasonable suspicion to stop Defendant Perez-Lemos's vehicle.

## 2.  No Evidentiary Hearing Is Necessary

The Court should not hold an evidentiary hearing before denying Defendant's motion to suppress fruits from the stop of Defendant's vehicle. Under Ninth Circuit and Southern District

08cr1191-DMS

precedent, as well as Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the granting of Defendant's motion. United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989); Crim. L.R. 47.1.

Here, Defendant has failed to support her allegations with a declaration, in clear violation of Local Rule 47.1(g). Moreover, in his moving papers, Defendant fails to provide any material factual distinctions – indeed, any distinctions at all – from what is contained in the files and records of discovery. See United States v. Howell, 231 F.3d 616, 620-23 (9th Cir. 2000) (holding that "[a]n evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist."). As such, this Court should deny Defendant's motion to suppress Defendant's statements without an evidentiary hearing.

C.    **DISCOVERY**

1.    **Items Which The Government Has Already Provided Or Will Voluntarily Provide**

a.    The Government will disclose to Defendant and make available for inspection, copying or photographing: any relevant written or recorded statements made by Defendant, or copies thereof, within the possession, custody, or control of the Government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the

08cr1191-DMS

Government; and that portion of any written record containing the substance of any relevant oral statement made by Defendant whether before or after arrest in response to interrogation by any person then known to Defendant to be a Government agent.  The Government will also to Defendant the substance of any other relevant oral statement made by Defendant whether before or after arrest in response to interrogation by any person then known by Defendant to be a Government agent if the Government intends to use that statement at trial.

       b.    The Government will permit Defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the Government, and which are material to the preparation of Defendant's defense or are intended for use by the Government as evidence during its case-in-chief at trial, or were obtained from or belong to Defendant;[1]

       c.    The Government will permit Defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are in the possession, custody or control of

---

    [1]    Rule 16(a)(1)(C) authorizes defendants to examine only those Government documents material to the preparation of their defense against the Government's case-in-chief. United States v. Armstrong, 116 S. Ct. 1480 (1996).  Further, Rule 16 does not require the disclosure by the prosecution of evidence it intends to use in rebuttal.  United States v. Givens, 767 F.2d 574 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

08cr1191-DMS

the Government, the existence of which is known, or by the

exercise of due diligence may become known, to the attorney for

the Government, and which are material to the preparation of his

defense or are intended for use by the Government as evidence

during its case-in-chief at trial;[2]

        d.    The Government has furnished to Defendant a

copy of his prior criminal record, which is within its possession,

custody or control, the existence of which is known, or by the

exercise of due diligence may become known to the attorney for the

Government;

        e.    The Government will disclose the terms of all

agreements (or any other inducements) with cooperating witnesses,

if any are entered into;

        f.    The Government may disclose the statements of

witnesses to be called in its case-in-chief when its trial

memorandum is filed;[3]

---

    2/    The Government does not have "to disclose every single
piece of paper that is generated internally in conjunction with
scientific tests." United States v. Iglesias, 881 F.2d 1519
(9th Cir. 1989), cert. denied, 493 U.S. 1088 (1990).

    3/    Production of these statements is governed by the Jencks
Act and need occur only after the witness testifies on direct
examination. United States v. Mills, 641 F.2d 785, 789-790 (9th
Cir.), cert. denied, 454 U.S. 902 (1981); United States v.
Dreitzler, 577 F.2d 539, 553 (9th Cir. 1978), cert. denied, 440
U.S. 921 (1979); United States v. Walk, 533 F.2d 417, 418-419 (9th
Cir. 1975). For Jencks Act purposes, the Government has no
obligation to provide the defense with statements in the
possession of a state agency. United States v. Durham, 941 F.2d
858 (9th Cir. 1991). Prior trial testimony does not fall within
the scope of the Jencks Act. United States v. Isigro, 974 F.2d
1091, 1095 (9th Cir. 1992). Further, an agent's recorded radio
                                                  (continued...)

1    g.    The Government will disclose any record of

2   prior criminal convictions that could be used to impeach a

3   Government witness prior to any such witness' testimony;

4    h.    The Government will disclose in advance of

5   trial the general nature of other crimes, wrongs, or acts of

6   Defendant that it intends to introduce at trial pursuant to Rule

7   404(b) of the Federal Rules of Evidence;

8    i.    The Government acknowledges and recognizes its

9   continuing obligation to disclose exculpatory evidence and

10  discovery as required by Brady v. Maryland, 373 U.S. 83 (1963),

11  Giglio v. United States, 405 U.S. 150 (1972), Jencks and Rules 12

12  and 16 of the Federal Rules of Criminal Procedure, and will abide

13  by their dictates.[4/]

14       **2.    Items Which Go Beyond The Strictures Of Rule 16**

15  _____

16  (...continued)
    transmissions made during surveillance are not discoverable under
17  the Jencks Act.   United States v. Bobadilla-Lopez, 954 F.2d 519
    (9th Cir. 1992).   The Government will provide the grand jury
18  transcripts of witnesses who have testified before the grand jury
    if said testimony relates to the subject matter of their trial
19  testimony.   Finally, the Government reserves the right to withhold
    the statement of any particular witness it deems necessary until
20  after the witness testifies.

21     [4/]    Brady v. Maryland requires the Government to produce all
    evidence that is material to either guilt or punishment.   Brady v.
22  Maryland, 373 U.S. 83 (1963).   The Government's failure to provide
    the information required by Brady is constitutional error only if
23  the information is material, that is, only if there is a
    reasonable probability that the result of the proceeding would
24  have been different had the information been disclosed.   Kyles v.
    Whitley, 115 S. Ct. 1555 (1995).   However, neither Brady nor Rule
25  16 require the Government to disclose inculpatory information to
    the defense.   United States v. Arias-Villanueva, 998 F.2d 1491
26  (9th Cir. 1993).

27                                                    08cr1191-DMS

28                              14

**1**

        **a.**    **The Requests By The Defendants For Specific**
                **_Brady_ Information Or General Rule 16**

**2**

                **Discovery Should Be Denied**

**3**        Defendant requests that the Government disclose all evidence

**4**   favorable to him, which tends to exculpate him, or which may be

**5**   relevant to any possible defense or contention they might assert.

**6**        It is well-settled that prior to trial, the Government must

**7**   provide a defendant in a criminal case with evidence that is both

**8**   favorable to the accused and material to guilt or punishment.

**9**   Pennsylvania v. Richie, 480 U.S. 39, 57 (1987); United States v.

**10**   Agurs, 427 U.S. 97 (1976); Brady v. Maryland, 373 U.S. 83, 87

**11**   (1963).  As the Court explained in United States v. Agurs, 427

**12**   U.S. 97, 104 (1976), "a fair analysis of the holding in Brady

**13**   indicates that implicit in the requirement of materiality is a

**14**   concern that the suppressed evidence may have affected the outcome

**15**   of the trial."  Thus, under Brady, "evidence is material only if

**16**   there is a reasonable probability that, had the evidence been

**17**   disclosed to the defense, the result of the proceeding would have

**18**   been different."  United States v. Bagley, 473 U.S. 667, 682

**19**   (1985) (emphasis added).  A "reasonable probability" is a

**20**   probability sufficient to undermine confidence in the outcome.

**21**   Pennsylvania v. Richie, 480 U.S. at 57 (quoting United States v.

**22**   Bagley, 473 U.S. at 682).

**23**        The Supreme Court has repeatedly held that the Brady rule is

**24**   not a rule of discovery; rather, it is a rule of fairness and is

**25**   based upon the requirement of due process.  United States v.

**26**   Bagley, 473 U.S. at 675, n. 6; Weatherford v. Bursey, 429 U.S. at

**27**

**28**

08cr1191-DMS

559; <u>United States v. Agurs</u>, 427 U.S. at 108.  The Supreme Court's analysis of the limited scope and purpose of the <u>Brady</u> rule, as set forth in the <u>Bagley</u> opinion, is worth quoting at length:

> Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur. [footnote omitted]. Thus, the prosecutor is not required to deliver his entire file to defense counsel,[5] but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial:  "For unless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside; and **absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose . . . but to reiterate a critical point, the prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial."**

<u>United States v. Bagley</u>, 473 U.S. at 675 (quoting <u>United States v. Agurs</u>, 427 U.S. at 108) (emphasis added); <u>see also</u> <u>Pennsylvania v. Richie</u>, 480 U.S. at 59 ("A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the Commonwealth's files."). Accordingly, the Government in this case will comply with the <u>Brady</u> mandate but rejects any affirmative duty to create or seek out evidence for the defense.

---

[5]    See <u>United States v. Agurs</u>, 427 U.S. 97, 106 (1976); <u>Moore v. Illinois</u>, 408 U.S. 786, 795 (1972). <u>See also</u> <u>California v. Trombetta</u>, 467 U.S. 479, 488, n. 8 (1984).  An interpretation of <u>Brady</u> to create a broad, constitutionally required right of discovery "would entirely alter the character and balance of our present system of criminal justice." <u>Giles v. Maryland</u>, 386 U.S. 66, 117 (1967) (Harlan, J., dissenting).  Furthermore, a rule that the prosecutor commits error by any failure to disclose evidence favorable to the accused, no matter how insignificant, would impose an impossible burden on the prosecutor and would undermine the interest in the finality of judgements.

08cr1191-DMS

1
b.    **Disclosure Of Witness Information Should Be**
2
**Denied Except As Is Agreed To By The**
**Government**

3
Regarding Government witnesses, the Government will provide

4
Defendant with the following items prior to any such individual's

5
trial testimony:

6
(1)  The terms of all agreements (or any other

7
inducements) it has made with cooperating witnesses, if they are

8
entered into;

9
(2)  All relevant exculpatory evidence

10
concerning the credibility or bias of Government witnesses as

11
mandated by law; and,

12
(3)  Any record of prior criminal convictions

13
that could be used to impeach a Government witness.

14
The Government opposes disclosure of rap sheet information of

15
any Government witness prior to trial because of the prohibition

16
contained in the Jencks Act.   See <u>United States v. Taylor</u>,

17
542 F.2d 1023, 1026 (8th Cir. 1976), <u>cert. denied</u>, 429 U.S. 1074

18
(1977).  Furthermore, any uncharged prior misconduct attributable

19
to Government witnesses, all promises made to and consideration

20
given to witnesses by the Government, and all threats of

21
prosecution made to witnesses by the Government will be disclosed

22
if required by the doctrine of <u>Brady v. Maryland</u>, 373 U.S. 83

23
(1963) and <u>Giglio v. United States</u>, 450 U.S. 150 (1972).

24
c.    **The Rough Notes Of Our Agents**

25
Although the Government has no objection to Defendant's

26
motion for the preservation of agents' handwritten notes, we

27

28

1    object to their production at this time.  Further, the Government

2    objects to any pretrial hearing concerning the production of rough

3    notes.  If during any evidentiary proceeding, certain rough notes

4    become relevant, these notes will be made available.

5        Prior production of these notes is not necessary because they

6    are not "statements" within the meaning of the Jencks Act unless

7    they comprise both a substantially verbatim narrative of a

8    witness' assertions <u>and</u> they have been approved or adopted by the

9    witness.  <u>United States v. Spencer</u>, 618 F.2d 605, 606-07 (9th Cir.

10    1980); <u>see also</u> <u>United States v. Kaiser</u>, 660 F.2d 724, 731-32

11    (9th Cir. 1981); <u>United States v. Griffin</u>, 659 F.2d 932, 936-38

12    (9th Cir. 1981).

13            **d.    Government Reports, Summaries, And Memoranda**

14        Rule 16, in pertinent part, provides:

15        [T]his rule does not authorize the discovery or
        inspection of reports, memoranda, or other internal
16        government documents made by the attorney for the
        government or <u>other government agent in connection with</u>
17        <u>the investigating or prosecuting of the case</u>.

18    Rule 16(a)(2); <u>see also</u> <u>United States v. Sklaroff</u>, 323 F. Supp.

19    296, 309 (S.D. Fla. 1971), and cases cited therein (emphasis

20    added); <u>United States v. Garrison</u>, 348 F. Supp. 1112, 1127-28

21    (E.D. La. 1972).

22        The Government, as expressed previously, recognizes and

23    embraces its obligations pursuant to <u>Brady v. Maryland</u>, 373 U.S.

24    83 (1963), <u>Giglio v. United States</u>, 450 U.S. 150 (1972), Rule 16,

25

26

27                                                08cr1191-DMS

28                        18

and the Jencks Act.[6] We shall not, however, turn over internal memoranda or reports which are properly regarded as work product exempted from pretrial disclosure.[7] Such disclosure is supported neither by the Rules of Evidence nor case law and could compromise other areas of investigation still being pursued.

### e.    Defendants Are Not Entitled To Addresses And Phone Numbers Of Government Witnesses

Defendant requests the name and last known address of each prospective Government witness. While the Government may supply a tentative witness list with its trial memorandum, it objects to providing home addresses. See United States v. Sukumolachan, 610 F.2d 685, 688 (9th Cir. 1980), and United States v. Conder, 423 F.2d 904, 910 (9th Cir. 1970) (addressing defendant's request for the addresses of actual Government witnesses). A request for the home addresses of Government witnesses is tantamount to a request for a witness list and, in a non-capital case, there is no legal requirement that the Government supply defendant with a list of the witnesses it expects to call at trial. United States v. Thompson, 493 F.2d 305, 309 (9th Cir.), cert. denied, 419 U.S. 835

---

6/    Summaries of witness interviews conducted by Government agents (DEA 6, FBI 302) are not Jencks Act statements. United States v. Claiborne, 765 F.2d 784, 801 (9th Cir. 1985). The production of witness interview is addressed in more detail below.

7/    The Government recognizes that the possibility remains that some of these documents may become discoverable during the course of the trial if they are material to any issue that is raised.

1  (1974); <u>United States v. Glass</u>, 421 F.2d 832, 833 (9th Cir.

2  1969).[8/]

3      The Ninth Circuit addressed this issue in <u>United States v.</u>

4  <u>Jones</u>, 612 F.2d 453 (9th Cir. 1979), <u>cert. denied</u>, 445 U.S. 966

5  (1980).  In <u>Jones</u>, the court made it clear that, absent a showing

6  of necessity by the defense, there should be no pretrial

7  disclosure of the identity of Government witnesses.  <u>Id.</u> at 455.

8  Several other Ninth Circuit cases have reached the same

9  conclusion.  <u>See, e.g.</u>, <u>United States v. Armstrong</u>, 621 F.2d 951,

10  1954 (9th Cir. 1980); <u>United States v. Sukumolachan</u>, 610 F.2d at

11  687; <u>United States v. Paseur</u>, 501 F.2d 966, 972 (9th Cir. 1974)

12  ("A defendant is not entitled as a matter of right to the name and

13  address of any witness.").

14                    **f.    Motion Pursuant To Rule 12(d)**

15      Defendant is hereby notified that the Government intends to

16  use in its case-in-chief at trial all evidence which Defendant is

17  entitled to discover under Rule 16, subject to any relevant

18  limitations prescribed in Rule 16.

19                    **g.    Defendant's Motion For Disclosure Of**

20  _____

21      [8/]    Even in a capital case, the defendant is only entitled
to receive a list of witnesses three days prior to commencement of
22  trial.  18 U.S.C. § 3432.  <u>See also</u> <u>United States v. Richter</u>, 488
F.2d 170 (9th Cir. 1973)(holding that defendant must make an
23  affirmative showing as to need and reasonableness of such
discovery).   Likewise, agreements with witnesses need not be
24  turned over prior to the testimony of the witness, <u>United States</u>
<u>v. Rinn</u>, 586 F.2d 1113 (9th Cir. 1978), and there is no obligation
25  to turn over the criminal records of all witnesses.  <u>United States</u>
<u>v. Taylor</u>, 542 F.2d 1023, 1026 (8th Cir. 1976); <u>United States v.</u>
26  <u>Egger</u>, 509 F.2d 745 (9th Cir.), <u>cert</u>. <u>denied</u>, 423 U.S. 842 (1975);
<u>United States v</u>. <u>Cosby</u>, 500 F.2d 405 (9th Cir. 1974).

27

28

### Oral Statements Made To Non-Government Witnesses Should Be Denied

Defendants are not entitled to discovery of oral statements made by them to persons who were not - at the time such statements were made - known by the defendants to be Government agents. The plain language of Rule 16 supports this position. Rule 16 unambiguously states that defendants are entitled to "written and recorded" statements made by them. The rule limits discovery of oral statements to "that portion of any written record containing the substance of any relevant oral statement made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a Government agent," and "the substance of any other relevant oral statement made by the defendant whether before or after arrest in response to interrogation by any person then known by the defendant to be a Government agent if the Government intends to use that statement at trial." The statutory language clearly means that oral statements are discoverable only in very limited circumstances, and then, only when made to a known Government agent.

### h.  Personnel Files of Federal Agents

Pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and United States v. Cadet, 727 F.2d 1453 (9th Cir. 1984), the Government agrees to review the personnel files of its federal law enforcement witnesses and to "disclose information favorable to the defense that meets the appropriate standard of materiality . . . ." United States v. Cadet, 727 F.2d at 1467-68. Further, if counsel for the United States is uncertain about the

08cr1191-DMS

materiality of the information within its possession, the material will be submitted to the court for in-camera inspection and review.   In this case, the Government will ask the affected law enforcement agency to conduct the reviews and report their findings to the prosecutor assigned to the case.   In United States v. Jennings, 960 F.2d 1488 (9th Cir. 1992), the Ninth Circuit held that the Assistant U.S. Attorney assigned to the prosecution of the case has no duty to personally review the personnel files of federal law enforcement witnesses.   In Jennings, the Ninth Circuit found that the present Department of Justice procedures providing for a review of federal law enforcement witness personnel files by the agency maintaining them is sufficient compliance with Henthorn.   Jennings, 960 F.2d at 1492.   In this case, the Government will comply with the procedures as set forth in Jennings.

Finally, the Government has no duty to examine the personnel files of state and local officers because they are not within the possession, custody or control of the Federal Government.   United States v. Dominquez-Villa, 954 F.2d 562 (9th Cir. 1992).

### i.   Reports Of Witness Interviews

Defendant has requested the production of all reports generated in connection with witness interviews.   To date, the Government does not have any reports regarding witness interviews or otherwise that have not been turned over to Defendant. However, to the extent that such additional reports regarding witness interviews are generated, the information sought by

Defendant is not subject to discovery under the Jencks Act, 18 U.S.C., Section 3500.  In Jencks v. United States, 353 U.S. 657 (1957), the Supreme Court held that a criminal defendant had a due process right to inspect, for impeachment purposes, statements which had been made to government agents by government witnesses. Such statements were to be turned over to the defense at the time of cross-examination if their contents related to the subject matter of the witness' direct testimony, and if a demand had been made for specific statements of the witness.  Id. at 1013-15.  The Jencks Act, 18 U.S.C., Section 3500, was enacted in response to the Jencks decision.  As the Supreme Court stated in an early interpretation of the Jencks Act:

> Not only was it strongly feared that disclosure of memoranda containing the investigative agent's interpretations and impressions might reveal the inner workings of the investigative process and thereby injure the national interest, but it was felt to be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations.

Palermo v. United States, 360 U.S. 343, 350 (1959).  Having examined the legislative history and intent behind enactment of the Jencks Act, the Court concluded, "[t]he purpose of the Act, its fair reading and its overwhelming legislative history compel us to hold that statements of a government witness made to an agent of the government which cannot be produced under the terms of 18 U.S.C. § 3500, cannot be produced at all."

Reports generated in connection with a witness's interview session are only subject to production under the Jencks Act if the

08cr1191-DMS

witness signed the report, or otherwise adopted or approved the contents of the report.   See 18 U.S.C. § 3500(e)(1); see also United States v. Miller, 771 F.2d 1219, 1231-31 (9th Cir. 1985) ("The Jencks Act is, by its terms, applicable only to writings which are signed or adopted by a witness and to accounts which are substantially verbatim recitals of a witnesses' oral statements."); United States v. Friedman, 593 F.2d 109, 120 (9th Cir. 1979) (an interview report that contains a summary of a witness' statements is not subject to discovery under the Jencks Act); United States v. Augenblick, 393 U.S. 248, 354-44 (1969) (rough notes of witness interview not a "statement" covering entire interview). Indeed, "both the history of the [Jencks Act] and the decisions interpreting it have stressed that for production to be required, the material should not only reflect the witness' own words, but should also be in the nature of a complete recital that eliminates the possibility of portions being selected out of context." United States v. Bobadilla-Lopez, 954 F.2d 519, 522 (9th Cir. 1992).   As recognized by the Supreme Court, "the [Jencks Act] was designed to eliminate the danger of distortion and misrepresentation inherent in a report which merely selects portions, albeit accurately, from a lengthy oral recital." Id.   The defendant should not be allowed access to reports which they cannot properly use to cross-examine the Government's witnesses.

**j.    Expert Witnesses**

1    The Government will disclose to Defendant the name,

2    qualifications, and a written summary of testimony of any expert

3    the Government intends to use during its case-in-chief at trial

4    three weeks before the trial date.

5    **k.    Other Discovery Requests**

6    To the extent that the above does not answer all of

7    Defendant's discovery requests, the Government opposes the motions

8    on the grounds that there is no authority requiring us to provide

9    such material.

10    **D.    LEAVE TO FILE ADDITIONAL MOTIONS**

11    The Government does not oppose Defendant's request for leave

12    to file further motions as long as such motions are based on newly

13    discovered evidence and such leave is granted with equal force to

14    the Government.

15    **IV**

16    **CONCLUSION**

17    For the foregoing reasons, the Government requests that

18    Defendant's motions be denied where indicated.

19    DATED: May 16, 2008.

20    Respectfully submitted,

21    KAREN P. HEWITT
     United States Attorney

22    
23    s/ Peter J. Mazza
     PETER J. MAZZA
     Assistant U.S. Attorney

24

25

26

27
                                                    08cr1191-DMS
28                                  25

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Case No. 08CR1191-DMS |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| DAVID PEREZ-LEMOS (2), | ) | |
| Defendant. | ) | |

IT IS HEREBY CERTIFIED THAT:

I, PETER J. MAZZA, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action.  I have caused service of the Government's Response in Opposition to Defendant's Discovery motion on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Norma Aguilar, Esq.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 16, 2008.

s/ Peter J. Mazza
PETER J. MAZZA

08cr1191-DMS

26